## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 13-30046** |
| | ) | |
| **EDDIE JONES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. DISTRICT JUDGE:**

On December 11, 2014, Eddie Jones was convicted of possession with the intent to distribute 28 grams or more of crack cocaine. After successfully seeking new counsel, Defendant filed a Motion for a New Trial (d/e 59).  Because Defendant has not shown that the Court's admission of a declarant's statement jeopardized Defendant's substantial rights or that his trial counsel was ineffective, the Court DENIES Defendant's Motion for a New Trial (d/e 59).

## I. BACKGROUND

A two-count Indictment charged Defendant Eddie Jones with possession with the intent to distribute 28 grams or more of crack

cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and

distributing crack cocaine on February 18, 2013 in violation of 21

U.S.C. § 841(a)(1) and (b)(1)(B). One week before Defendant's

criminal trial began on December 9, 2013, the Government moved

to dismiss Count 2 without prejudice. After the two-day trial, the

jury found Defendant guilty on Count 1—possession with the intent

to distribute crack cocaine—and that the Government had proven

beyond a reasonable doubt that the offense involved 28 grams or

more of crack cocaine. Defendant subsequently filed the Motion for

a New Trial (d/e 59) that is now before the Court.

### A. Officer Testifies At Trial About Controlled Buy In February And Tracking Defendant's Car Months Later.

Six police officers and a chemist and fingerprint examiner for

the Drug Enforcement Administration ("DEA") testified for the

Government at Defendant's trial. Springfield Police Officer Timothy

Zajicek was the first Government witness to take the stand. During

direct examination, Assistant U.S. Attorney John Childress asked

Officer Zajicek whether Officer Zajicek "receive[d] information

regarding the sale of crack cocaine in Springfield by an individual

known as Eddie" on February 18, 2013. Trial Tr., d/e 55 at 9.

Officer Zajicek answered "yes" and said that he "received that information from a confidential source."  Id.  Officer Zajicek went on to testify that he "receive[d] information" that "Eddie" was selling crack from a silver car with military license plates and from his house.  Id. at 9-10.  After Officer Zajicek "receive[d] that information," Office Zajicek testified that he organized a controlled buy between the confidential source ("CS") and "Eddie."  Id. at 10.

The direct examination continued:

PROSECUTOR: As you watched the confidential source approach the area, what happened next?

WITNESS:  He approached the front porch of a house.

PROSECUTOR:   Who is he, Officer?

WITNESS: I'm sorry.  The confidential source.

PROSECUTOR: Thank you.

WITNESS: The confidential source approached a house in the 1700 block of East Brown and knocked on the door. Nobody answered.  At that time the CS stayed on the porch, made a phone call, and a short time later a silver vehicle arrived.

PROSECUTOR: Were you able to observe that silver vehicle?

WITNESS: Yes, I was.

PROSECUTOR: Could you describe it, please?

WITNESS: It was a silver, four-door Chevy compact car with military license plates and a damaged rear bumper.

PROSECUTOR: Were you able to see the license plate?

WITNESS: Yes.

PROSECUTOR: What was the letters and/or numbers on the license plate?

WITNESS: It was ELJ1 and it was a military type specialty plate.

PROSECUTOR: Was there a designation as to the military aspect of the Place?

WITNESS: It has a US on it.

PROSECUTOR: What did the CS then do?

WITNESS: The CS got into the silver vehicle and met with the driver.  The meeting lasted approximately a minute.

PROSECUTOR: And then what happened?

WITNESS: The CS exited the silver vehicle and walked back to a pre-determined location, where he got in my vehicle.  As he was walking back, the CS was under constant police supervision; he didn't stop or have contact with anyone else.

PROSECUTOR: Did you then meet personally with the CS?

WITNESS: Yes.

PROSECUTOR: And what happened?

WITNESS: The CS got in my vehicle and handed me two small baggies of crack cocaine. And we then conducted a second search of the CS. During the search no money or contraband was found on his person.

After Officer Zajicek testified that a field test confirmed that the substance in the baggies was crack cocaine, the examination continued:

PROSECUTOR: Did the CS tell you who was in the car?

DEFENSE COUNSEL: I object to hearsay, please.

PROSECUTOR: Your Honor, it is not asserted for the truth of the matter. It is instead meant to illuminate why the officer took the next step in his investigation.

THE COURT: I'll allow it. And you're to consider it only for that limited purpose.

WITNESS: The CS indicated to me that the driver of the vehicle was the black male he knew as Eddie.

PROSECUTOR: The same individual he had earlier identified?

WITNESS: Yes.

Id. at 11-13.

Officer Zajicek then described what he did next: he ran the license plate number of the silver vehicle with the Secretary of State's Office and learned that Eddie Jones owed the vehicle. Id. at 14. He also obtained a copy of Eddie Jones's driver's license

picture.  Id.  The prosecutor then asked Officer Zajicek whether the officer had "receive[d] any significant information about . . . Eddie" from February to May of 2013.  Id. at 15.  Officer Zajicek answered: "[i]n April, I received information that Eddie was traveling out of town and bringing back narcotics to Springfield."  Id. at 15.  Officer Zajicek then testified that in May, he placed a GPS tracking device on Eddie Jones's silver vehicle that would alert Officer Zajicek when the vehicle went outside of a predetermined area around Springfield.  Id. at 16-17.

During a morning break in the trial when the jury was out of the courtroom, defense counsel made a "brief record" on the hearsay objection.  Id. at 43.  Defense counsel stated that the inextricably intertwined doctrine that may have previously permitted hearsay statements to show what officers did next had been "discredited."  Id.  He further argued that unless such statements are admissible under Federal Rule of Evidence 404(b), they are inadmissible.  Id.  And in this situation, he did not think the CS's identification of "Eddie" was admissible, even with the Court's limiting instruction.  Id. at 44.

In response, the prosecutor contended that the identification of the defendant was "most general" and that his first name, "Eddie," was "common." Id. He further argued that the CS's statement was "directly linked" to the next investigative step by Officer Zajicek, which was identifying the license plate number and checking it with the registration records at the Secretary of State's Office. Id.

### B. Officers Testify About Traffic Stop And Search Of Defendant's Vehicle That Uncovered Crack Cocaine.

Officer Zajicek further testified that on June 5, he received an alert that the silver vehicle he was tracking had left Springfield and was heading north. Id. at 17-18. Officer Zajicek contacted Illinois State Police Trooper Dustin Weiss, who was also assigned as a DEA Task Force Officer, to conduct an interdiction stop when the car was heading back to Springfield. Id. at 18, 20, 53. Officer Zajicek told the jury that although the GPS tracking device had stopped working, Officer Zajicek and Trooper Weiss, who were in different vehicles, continued to track the silver car as it travelled south toward Springfield. Id. at 21-22.

At trial, Trooper Weiss testified that he pulled over the silver vehicle after he observed the driver violating several traffic laws. Id. at 60. Trooper Weiss told the jury that he smelled marijuana coming from the vehicle and after writing Eddie Jones a warning for the traffic violations, relayed this information to Springfield Police Officer Jeffrey Coker, a K-9 officer who had been on standby. Id. at 63, 69-70. Officer Coker's dog conducted a sniff test of the silver vehicle, and the dog alerted to the presence of a controlled substance. Id. at 71. Trooper Weiss testified that he and two other troopers—Illinois State Trooper Eric Weston and Springfield Police Officer Andrew Barnes—searched the vehicle and found cocaine, crack cocaine, marijuana, small baggies, and razorblades in the air filter. Id. at 70-155; see also id. at 161-164 (testimony of Officer Barnes). The Court entered photos of what the officers found in the air filter, as well as the screwdriver Officer Barnes recovered from under the hood, into evidence without objection. See id. at 79, 81, 84.

## C. DEA Agents Testify About Defendant's Statements And Opine On Distribution Methods And Chicago As A Source City.

The Government also presented testimony about an unrecorded custodial interrogation of Defendant by DEA Agent Scott Giovannelli. See Trial Tr., d/e 55 at 199-213. Agent Giovannelli told the jury that Defendant indicated his "source" was in Chicago and that Defendant met this "source" through Defendant's brother. Id. at 210. On cross-examination, Agent Giovannelli conceded that Defendant had not used the term "source" during the interview, but had instead referred to a "guy." Id. at 213. Agent Giovannelli also stated that Defendant told the law enforcement officers present at the interview that they wouldn't be interested in his "users." Id. at 211; see also id. at 214-15. "Towards the end," Agent Giovannelli testified, "[Defendant] indicated to us that he did the crime and he had to do the time now." Id. at 212.

DEA Agent Glenn Haas also testified as an expert witness for the Government. Agent Haas opined that the amount of cocaine and crack cocaine in the air filter as well as the packaging materials the officers recovered suggested that the drugs were meant for

distribution.  Id. at 234.  Agent Haas additionally told the jury that Chicago, where Officer Zajicek testified he suspected the silver car was travelling to when it left Springfield, was a source city for narcotics.  Id. at 230.  He also stated that it was "not uncommon" for dealers to hide drugs in the engine compartment of a vehicle. Id. at 231.

### D. During Closing Argument, Prosecutor Uses February 18th Controlled Buy As Evidence Of Defendant's Intent To Distribute the Drugs Found In June.

After his opening remarks, the prosecutor asked the jury in his closing argument: "How did this case begin?  As you might expect, Eddie Jones was doing what drug dealers do; he was selling drugs."  Trial Tr., d/e 56 at 259.  The prosecutor then began discussing the February 18th controlled buy and laid out the evidence that he believed showed "that the defendant sold crack cocaine on February 18th."  Id. at 260.  During this colloquy, the prosecutor did not reference Officer Zajicek's testimony that the CS told him that "Eddie" sold the CS cocaine.  The prosecutor did tell the jury they could "use that purchase on February 18th, or that sale by the defendant, to decide whether the defendant intended to distribute the drugs he had with him in June, and that he knew

what he was doing." Id. at 260. The prosecutor added, "It seems a little obvious to say that someone intends to do what they have already done, but that is exactly the case." Id. at 260-61. He concluded his discussion about the February controlled buy with this remark: "The bottom line is that crack cocaine was sold on February 18th by the defendant. And the only reason it was sold was the defendant's willingness to do what drug dealers do and that is to sell drugs." Id. at 262.

### E. The Court Appoints New Counsel To Represent Defendant On His Motion For A New Trial.

After the jury's guilty verdict, Defendant's trial counsel filed a timely Motion for New Trial (d/e 49) pursuant to Rule 33 and a Motion for Extension of Time to file a Brief in Support of a Motion for a New Trial (d/e 50). The Court granted the Motion for Extension of Time. See Text Order dated December 30, 2013. However, before defense counsel submitted a memorandum in support of the Motion for a New Trial, Defendant filed a pro se Motion for a New Trial (d/e 51), alleging that his counsel was ineffective at trial. The Court struck Defendant's pro se Motion for a New Trial (d/e 51) at a hearing and appointed D. Peter Wise to

represent Defendant on the pending Motion for New Trial (d/e 49), pursuant to the Criminal Justice Act. Hearing Tr., d/e 58 at 9. The Court also granted Mr. Wise leave to file any motion he deemed necessary. Id. at 12. Assistant U.S. Attorney Bryan Freres was present on behalf of the Government and did not object.

Mr. Wise subsequently filed a renewed Motion for a New Trial (d/e 59) pursuant to Federal Rules of Criminal Procedure 29(c) and 33. The Court held a hearing on the Motion for New Trial on May 5, 2014. See Minute Entry dated May 5, 2014. At the hearing, the Government recognized that the Seventh Circuit has discredited the "inexplicably intertwined" doctrine the Government discussed in its Response to the Motion for a New Trial (d/e 59) and withdrew the portion of the Response that relied on it. See United States v. Miller, 673 F.3d 688, 695 (7th Cir. 2012) (stating that "'the inextricable intertwinement doctrine has outlived its usefulness,' and we instructed district courts to stop using it") (quoting United States v. Gorman, 613 F.3d 711, 718 (7th Cir. 2010)).

## II.   LEGAL STANDARD

The Court may grant a new trial "if the interest of justice so requires." FED. R. CRIM. P. 33(a).  When a defendant seeks a new trial because of an alleged trial error, the Court will grant a new trial if there is a "reasonable possibility" that the error had a prejudicial effect upon the jury's verdict," or if the error jeopardized the defendant's substantial rights."  See United States v. Van Eyl, 468 F.3d 428, 436 (7th Cir. 2006) (internal citations omitted); United States v. Reed, 986 F.2d 191, 192 (7th Cir.1993) (internal citations omitted).  The Court is to grant these motions "sparingly . . . only in those really exceptional cases."  Reed, 986 F.2d at 192.

Defendant additionally moves for a new trial under Federal Rule of Criminal Procedure 29(c).   Rule 29(c) governs motions for a judgment of acquittal, which courts grant when evidence is insufficient to support a conviction.  See FED. R. CIV. P. 29(a).  The standard for granting a motion under Rule 29(c) is different but similarly strict.  To determine sufficiency of the evidence, the Court evaluates whether any rational trier of fact could have found that the Government proved the essential elements of the crimes beyond a reasonable doubt.  United States v. Torres-Chavez, 744 F.3d 988,

993 (7th Cir. 2014) (stating that a movant under Rule 29 "faces a nearly insurmountable hurdle").   In making that determination, the Court views the evidence in the light most favorable to the Government.  Id.

## III.  ANALYSIS

Defendant bases his Motion for a New Trial (d/e 49) on two primary grounds.  He first argues that the Court erred in overruling defense counsel's hearsay objection at trial and allowing Officer Zajicek to tell the jury that the CS told him that "Eddie" had sold him drugs during the controlled buy.  This statement, Defendant contends, was inadmissible and irrelevant hearsay that violated his Sixth Amendment Right to Confrontation.

Defendant's next asserts that his trial counsel was ineffective for his alleged failure to do three things.  Defendant first argues that his defense counsel should have objected to Officer Zajicek's alleged hearsay testimony regarding statements the CS made to the officer about "Eddie" before and after the February 18th controlled buy.  Second, according to Defendant, his trial counsel should have objected to evidence of the February 18th controlled buy and Defendant's trips out of Springfield as inadmissible under Federal

Rule of Evidence 404(b). Defendant also believes that his trial counsel was ineffective for not using the Illinois statute that requires Illinois state police troopers to record all enforcement stops during Officer Zajicek's cross examination after Officer Zajicek testified that he had not recorded the Defendant's traffic stop.

### A. Defendant Had Leave To File An Additional Motion For New Trial Under Federal Rules Of Criminal Procedure 33 And 45.

The Government seeks to quash these latter grounds regarding ineffective assistance of counsel as untimely. Under Rule 33, Defendant must file a Motion for a New Trial within 14 days of the guilty verdict in his case. FED. R. CRIM. P. 33(b)(2). Defendant's trial counsel filed a Motion for New Trial within 10 days of the verdict in this case. See Mot., d/e 49 filed on December 21, 2013 and Minute Entry stating verdict dated December 11, 2013. That Motion asserted the one hearsay issue defense counsel D. Peter Wise raises in the current Motion for a New Trial (d/e 59). The Government argues that the three additional arguments about ineffective assistance of counsel in the more recent Motion (d/e 59), however, are untimely because Defendant neither sought nor received "leave to expand his motion" to include these arguments.

On the contrary, at the post-trial status hearing at which Mr. Wise accepted his appointment as defense counsel, the Court acknowledged the pending Motion for a New Trial filed by Defendant's trial counsel and granted Mr. Wise leave to file "any motions" that he and Defendant "deem necessary." <u>See</u> Hearing Tr., d/e 58 at 12. Yet the Government did not object at that point or moments later at the conclusion of the hearing when the Court asked the prosecutor directly whether "anything else" should be addressed. <u>See</u> Hearing Tr., d/e 58 at 12.

Mr. Wise later memorialized the Government's position about a renewed or supplemental motion for a new trial in Defendant's "Motion to Continue Defendant's Motion for a New Trial and For Additional Time to File Motions." In that Motion, Defendant noted the Court's decision to grant him leave to file necessary motions and sought "a brief period of additional time to complete *additions* to the existing Motion for a New Trial." Mot. to Continue, d/e 57 ¶¶ 4, 5 (emphasis added). The Motion states that "Assistant United State's Attorney Bryan Freres has no objection to additional time to file the post-trial motion nor a continuance of the scheduled hearing date on the post-trial motion." <u>Id.</u> ¶ 7. The Court granted

the Motion and the Government did not object.  <u>See</u> Text Order

dated March 25, 2014.

Rule 45(b) allows the Court to extend the time for a motion

before the original deadline or before the previously extended

deadline expires, unless the party failed to act because of excusable

neglect.  <u>See also</u> <u>United States v. Holt</u>, 170 F.3d 698, 703 (7th Cir.

1999) (relying on previous of version of Rule 33 that set seven-day

time period and finding that defendant could not amend his motion

for a new trial to include an additional ground after the deadline

imposed by Rule 33, unless the district court granted an extension

of time within the original time period).  Here, Defendant's trial

counsel filed a timely Motion for a New Trial and the Court granted

Defendant's contemporaneously filed First Motion for Extension of

Time to File Brief in Support of that Motion.  <u>See</u> Mot. for a New

Trial, d/e 49 (filed on December 21, 2013 within 14 days of verdict);

First Mot. for Extension of Time, d/e 50; Text Order dated

December 30, 2013 (granting First Motion to extend deadline to

January 22, 2014).  The Court timely granted the second motion for

an extension that Defendant's trial counsel filed before the

previously extended deadline expired.  <u>See</u> Second Mot. for

Extension of Time to File Memorandum, d/e 53 (filed on January 16, 2013); Text Order dated January 17, 2014 (granting Second Motion to extend deadline to February 28, 2014). On February 13, 2014, two weeks before the deadline to file the supporting memorandum, the Court appointed D. Peter Wise to represent the defendant and granted him leave to file "any necessary motions." See Hearing Tr., d/e 58 at 12 and Minute Entry dated February 13, 2014.

The Government distinguishes the *motion* filed by Defendant's trial counsel and the *memorandum* for which the Court twice gave defense counsel extensions of time to file. However, neither the Local Rules nor Seventh Circuit case law recognizes a meaningful difference between the two. Although some attorneys before this Court file motions and supporting memoranda separately, neither the Local Rules nor the Federal Rules of Criminal Procedure require it. See, e.g., Mot. to Suppress Traffic Stop, d/e 20 and Mem. in Support of Motion to Suppress, d/e 21. Therefore, the Court granted Mr. Wise leave to file any supplemental motions and his Motion to Continue (d/e 57) within the previously-extended

timelines, and the supplemental arguments in his motion are timely.

Moreover, the Court could have extended time for supplemental arguments even after the time expired because any "neglect" that caused the allegedly delayed supplemental motion was "excusable." See FED. R. CRIM. P. 45(b)(1)(B).

Before making the equitable determination about whether a party's delay in filing a motion was due to "excusable neglect," the Court balances multiple factors, including the danger of prejudice to the non-moving party, the length of delay and the impact of such a delay on the judicial proceedings, whether the movant acted in good faith, and the extent to which the delay was in the movant's control. See United States v. Cates, 716 F.3d 445, 448 (7th Cir. 2013) (applying factors to untimely motion brought under Rule 33). The Seventh Circuit's decision in United States v. Cates demonstrates how those factors weigh in favor of treating Mr. Wise's Motion for a New Trial as a supplement to the timely Motion for a New Trial filed by Defendant's trial counsel.

In Cates, a new attorney was appointed to represent the defendant after he was convicted by a jury for willful deprivation of

civil rights. 716 F.3d at 447. The new attorney's motion seeking a new trial came five months after the guilty verdict. Id. Both the Seventh Circuit and the district court, however, only considered the two months between the new attorney's appointment and his filing of the motion for a new trial as the period of delay. Id. at 449 n.2. The court in Cates recognized, as this Court does, that new counsel requires time to familiarize himself with the case. Id. at 449; see also United States v. Munoz, 605 F.3d 359, 372 (6th Cir. 2010) (affirming district court's finding of excusable neglect when successor counsel requested leave to file tardy post-conviction motion within 5 days of appointment and filed the motion 10 weeks later due to "sensitive posture" and "unique difficulties" of case).

Ultimately in Cates, the Seventh Circuit found that the new counsel had not justified the two-month delay when the attorney's motion contained "vague excuses" and did not articulate a suggested timeline for the extension, leaving the court to only speculate about the duration and impact of further delay. 716 F.3d at 449.

In the case sub judice, however, Mr. Wise filed a motion to extend the deadline to file any motions five weeks after the Court

granted him leave to file such a motion and one week before the

deadline expired. Mr. Wise requested the transcript within days of

his appointment and even before formally accepting the

appointment. <u>See</u> Minute Entry dated February 13, 2014 and filing

of Transcript on February 14, 2014. In his motion requesting more

time, Mr. Wise explained that he needed to meet with Defendant's

trial counsel, who was out of the office for the remainder of the

period the Court had imposed to file any new motions. Mot. to

Continue, d/e 57 ¶ 6. Additionally, the Government was on notice

not only about the hearsay issue raised in trial counsel's Motion for

a New Trial, but also the issue of ineffective assistance of counsel

Mr. Wise later raised because Defendant himself has argued

multiple times since October 4, 2013 that his counsel was

ineffective. <u>See</u> Mot. to Dismiss Counsel, d/e 15 (dated October 4,

2013 and denied by the Court on October 9, 2013); Mot. to Dismiss

Counsel, d/e 26 (dated November 11, 2013 and stricken by the

Court on November 25, 2013); pro se Mot. for a New Trial, d/e 51

(dated January 10, 2014 and stricken by the Court on January 24,

2014). Finally, any potential prejudice to the Government is not

significant enough to tip the balance against a finding of excusable

neglect.  See Cates, 716 F.3d at 449 (noting district court's finding that a "minimal" two-month delay did "not pose a great threat of prejudice to the government's position).  Accordingly, even if Mr. Wise's Motion for a New Trial (d/e 59) were untimely, the Court has the discretion to allow it due to excusable neglect under Rule 45 and finds that any delay was excusable.

### B. Admission Of The CS's Statement Was Not Error And Even If The Admission Was Error, It Was Harmless.

Officer Zajicek's testimony that the CS told him "Eddie" was the person in the car who sold the CS drugs—if offered for the truth—would be inadmissible hearsay under Federal Rule of Evidence 801.  If that statement is hearsay, the Sixth Amendment's guarantee of Defendant's right to confront witnesses is implicated. See Crawford v. Washington, 541 U.S. 36, 53-55 (2004)(explaining that the Confrontation Clause of the Sixth Amendment bars the admission of testimonial hearsay evidence when the declarant is unavailable and the defendant did not have a prior opportunity to cross-examine the declarant).  However, non-hearsay use of a declarant's out-of-court statement does not violate the

Confrontation Clause.  <u>Jones v. Basinger</u>, 635 F.3d 1030, 1045 (7th Cir. 2011).

When deciding whether an out-of-court statement is admissible, the Court weighs the need to provide context against the prejudicial effect of admitting the statement.  <u>Mancilla</u>, 580 F.2d 1301, 1309 (7th Cir. 1978) ("the question [of whether an out-of-court statement can be offered for something other than its truth] is one of relevance and prejudice, not of hearsay."); <u>United States v. Lovelace</u>, 123 F.3d 650, 652 (7th Cir. 1997) (finding that an informant's statement will be admitted after the court assesses the statement's relevance and prejudicial effect).

A CS's out-of-court statement that enables the jury to understand what happened in a case—by providing context to otherwise meaningless conversations, connecting trial testimony, or clarifying issues—may have a non-hearsay purpose that favors the statement's admission.  <u>United States v. Eberhart</u>, 434 F.3d 935 (finding that officer's testimony about declarant identifying his drug supplier as "E" aided jury's understanding about why officers asked declarant to call "E" and provided context for the recorded conversation the jury later heard between declarant and "E");

Basinger, 635 F.3d at 1046 (stating that "course of investigation" exception is easily misused and should be applied when declarant's statement "bridge gaps" in testimony that would otherwise confuse or mislead jurors). Statements that rebut an inference of police misconduct or explain why officers targeted a defendant may also have non-hearsay purposes. See, e.g., United States v. Silva, 380 F.3d 1018, 1020-21 (stating that an informant's tip is relevant when the tip explains why the defendant was targeted or dispels an accusation that the officers involved targeted defendant for nefarious purposes).

The Court in this case allowed Officer Zajicek to testify about the CS's statement that "Eddie" had sold the CS cocaine over objection after the prosecutor explained that the testimony was meant to "illuminate" the officer's next step of checking the license plate number with the Secretary of State's Office. This testimony was necessary to illuminate, explain, or justify this next step.

The CS's statement was necessary and proper background information for the actions Officer Zajicek took: (1) running the plates to determine the owner of the silver car; (2) targeting Defendant for investigation of drug dealing; (3) obtaining a tracking

device for Defendant's car; (4) following Defendant from Chicago; (5) arranging for an interdiction officer to stop the Defendant; (6) explaining why Officer Zajicek asked Trooper Weiss to look for probable cause to stop Defendant; and (7) arranging for a drug dog to be on standby.

Admittedly, the admission of a CS's statement to a police officer is always a close call. The Seventh Circuit has cautioned against its admission as a "particular potential for abuse." <u>United States v. Adams</u>, 628 F. 3d 407, 416 (7th Cir. 2010). Further, the Seventh Circuit reviews the district court's ruling <u>de</u> <u>novo</u>. (The focus in <u>Adams</u> was the Confrontation Clause, but that issue has been raised here as well, and the court's analysis of the relevance of an informant's statement is useful here also.)

However, here, the elicitation and admission were appropriate. Unlike <u>Adams</u>, the CS's statement did not directly inculpate Defendant on the charges in the trial. <u>Adams</u>, 628 F. 3d at 417. The statement was brief and consistent with the officer's previous testimony. The statement allowed the officer to confirm who "Eddie" was by full name and by his driver's license picture after running his plates with the Secretary of State's Office and

subsequently targeting him.  See Silva, 380 F. 3d at 1020 ("If a jury

would not otherwise understand why an investigation targeted a

particular defendant, the testimony could dispel an accusation that

the officers were officious intermeddlers staking out [the defendant]

for nefarious purposes"); Eberhart, 424 F.3d at 940 n.1 (noting that

the officer's testimony about the declarant identifying his drug

supplier as "E" aided the jury's understanding about why the

officers asked the declarant to call "E" and gave context to the

recorded phone conversation the jury heard).  Without this

evidence, the jury may have believed Defendant Jones was

randomly targeted with a tracking device.

Moreover, the Court must also weigh the admission of the

statement against its prejudicial effect.  Lovelace, 123 F. 3d at 652-

53.  The repetition, substance, and context of the admitted

statement are all relevant to the Rule 403 determination of whether

the statement's prejudicial effect outweighs it probative value.  Id.

at 652.  An out-of-court statement that explicitly names the

defendant and directly implicates the defendant in criminal activity

can be unfairly prejudicial.  Compare Lovelace, 123 F. 3d at 653

(recognizing that hearsay testimony about an informant's tip

containing a specific charge of criminality may be extremely prejudicial) and United States v. Williams, 133 F.3d 1048, 1051 (7th Cir. 1998) (finding that agent's testimony about an informant's statement naming defendant as a suspect in a bank robbery was too prejudicial because jury may use statement as proof of defendant's involvement in bank robbery); with United States v. Martinez, 939 F.2d 412, 414 (7th Cir.1991) (holding that admission of tip with vague reference to "man" who offered to sell cocaine was not prejudicial in case about drug conspiracy between multiple male defendants).

But in this case, by the time Officer Zajicek testified that the CS told him "Eddie" sold him drugs in the car, the jury already heard that a man named "Eddie" had sold drugs from his silver car, that Officer Zajicek had set up a controlled buy between "Eddie" and the CS, and that Officer Zajicek watched the CS go into the silver car with military license plates and emerge with drugs.

Finally, though the Court's limiting instruction was brief, it was sufficient to minimize any potential prejudice. Defendant argues that the Court's instruction, along with the prosecutor's explanation that the statement was relevant to "illuminate" the

officer's next steps, was insufficient to extinguish the risk that the jurors would use the statement for its truth. But a presumption that a jury will follow a court's instruction exists unless the hearsay statement is "overwhelmingly incriminating" or there is an "overwhelming probability" that the jury could not follow the instruction. See Lovelace, 123 F.3d at 654; United States v. Ochoa–Zarate, 540 F.3d 613, 620 (7th Cir. 2008) (internal citations omitted). Such is not the case here. On the contrary, the prosecutor's explanation for the statement's alleged admissibility, which the jury heard, served as an additional "instruction" about how to receive the forthcoming statement from the CS. Accordingly, the CS's out-of-court statement implicating the defendant in the controlled buy was not overly prejudicial, and if its admission were error, any error was harmless. See Williams, 133 F.3d at 1053 ("Error is harmless unless it results in actual prejudice or had substantial and injurious effect or influence in determining the jury's verdict.") (internal citations omitted.)

To determine when an error is harmless, courts looks to the impact and importance of the witness's testimony to the government's case, the cumulative nature of the testimony, whether

any corroborating or contradictory evidence exists, and the strength of the government's case.  Adams, 628 F.3d at 417.  The impact and importance of the CS's statement was minimal because, as previously discussed, Officer Zajicek had previously testified about multiple statements the CS made to him about "Eddie." Additionally, Officer Zajicek's determination that the defendant, Eddie Jones, was the owner of the silver car in which the CS conducted the controlled buy corroborated the CS's statement that "Eddie" sold him drugs in the car.  Finally, the Government had a strong case against the defendant.  Months after conducting the controlled buy and confirming that Eddie Jones owned the silver car, law enforcement officers discovered drugs in the hood of the car when the defendant was behind the wheel.  See Adams, 628 F.3d at 417 (finding harmless error due to overwhelming evidence when officer found crack in defendant's hat, smoking paraphernalia in his waistband, and two baggies of cocaine covered in feces in defendant's possession).  Agent Giovannelli testified that after Defendant was arrested, he told Agent Giovannelli that he had a "guy" in Chicago and that the police wouldn't be interested in Defendant's "users."  In light of this evidence, the CS's statement

that "Eddie" sold him drugs in the car in February was a small brick in the wall the Government built to meet its burden in this case.

The Court also notes the possible impact to this analysis of an agreement between the prosecutor and defense counsel regarding Count 2 and the 404(b) evidence. The Court had some indication about the existence of an agreement between the parties at the Final Pretrial Conference when defense counsel stated on the record that he had reviewed the Government's 404(b) evidence and had no objection to its admission at trial. <u>See</u> Hearing Tr., d/e 63 at 2. Minutes later, the Government moved to dismiss Count 2 of the Indictment. <u>See</u> Minute Entry dated December 2, 2013.

At the hearing on the present motion, the Government confirmed an agreement: "But essentially the agreement was we would dismiss Count 2 as long as there was no objection to us introducing the evidence of the buy for certain purposes under 404(b) and John Taylor readily agreed." <u>See</u> Hearing Tr., d/e 64 at 6.

Defense counsel's agreement not to object to evidence of the February 18th controlled buy under Rule 404(b) did not waive any

objection to testimony about February 18th on other evidentiary or constitutional grounds. The agreement only waived objections to the introduction of the buy "for certain purposes under 404(b)." Despite that narrow scope, defense counsel may have waived the defendant's opportunity to argue that he was not the person in the silver car who sold the CS the drugs.

Rule 404(b) bars the admission of "evidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

But Rule 404(b) allows evidence of a crime, wrong, or other act, to prove "motive, opportunity, intent preparation plan, knowledge, identity, absence of mistake, or lack of accident." If the Government was using the February 18th buy as 404(b) evidence, then "the person" referenced in Rule 404(b) would be the defendant. If not, the February 18th buy would necessarily be irrelevant. See FED. R. EVID. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."). When defense counsel agreed not to contest the evidence

of the controlled buy for "certain purposes under 404(b)," he may have waived any opportunity to contest the prosecutor's theory that "the person" in the car—and "the person" in Rule 404(b)—was Defendant Eddie Jones. Without knowing the exact discussion the attorneys had about the agreement, the Court is hesitant to conclusively find a waiver. The possibility of a waiver, though, further confirms that if the admission of the CS's statement about the identity of Defendant was error, any error was harmless.

### C. Defense Counsel Was Not Ineffective At Trial.

Defendant next argues that his trial counsel was ineffective for declining to object to testimony about statements the CS made about Defendant's conduct before and after the controlled buy on February 18th. Defendant also asserts that his trial counsel was ineffective for not cross-examining law enforcement officers about an Illinois statute that requires them to record all traffic stops. Because both of these omissions were strategy decisions Defendant's trial counsel made, and Defendant has not shown prejudice, trial counsel was not ineffective.

To prove his trial counsel was ineffective, Defendant must show that his trial counsel was deficient and that the deficiency

prejudiced Defendant.  Strickland v. Washington, 466 U.S. 668, 687

(1984).  To show prejudice, Defendant has to establish that a

"reasonable probability" exists that but for his trial counsel's alleged

error, the outcome of the trial—in this case the guilty verdict—

would have been different.  Id. at 694 ("When a defendant

challenges a conviction, the question is whether there is a

reasonable probability that, absent the errors, the factfinder would

have had a reasonable doubt respecting guilt.").

In asserting this claim, Defendant faces a high hurdle.  The

Court indulges in a "strong presumption" that the actions of

Defendant's counsel fall within the "wide range of reasonable

professional assistance."  Id. at 689.  Therefore, Defendant must

overcome the presumption that his counsel's actions "might be

considered sound trial strategy."  Id. (internal citations omitted).

### 1. Trial Counsel Was Not Ineffective For Declining To Object To Evidence About Defendant's Actions Before Or During The February 18th Controlled Buy Under 404(B).

Defendant charges ineffective assistance of counsel based on

his belief that the testimony of the February 18th controlled buy was

inadmissible evidence under Federal Rule of Evidence 404(b).  Rule

404(b) bars the use of evidence about a defendant's prior crimes or

bad acts to prove a defendant's character—for example, that he is a criminal—and to show that he conformed to that character at a particular time. However, 404(b) evidence may be admissible to prove a purpose other than conformity or propensity, such as intent or knowledge. FED. R. EVID. 404(b) (2). The parties vigorously dispute whether the evidence of the controlled buy proved intent and knowledge, two of the permissible uses under 404(b), or whether the evidence was inadmissible propensity evidence.

One important fact missing in the Government's response to the instant motion strongly affects the Court's analysis of this issue: the parties agreed that if the Government sought to dismiss Count 2 of the Indictment, which charged the conduct underlying the February 18th controlled buy, Defendant's trial counsel would not object to the admission of that conduct as 404(b) evidence at trial. This agreement between the parties means the Court need not determine whether the controlled-buy evidence was admissible under Rule 404(b) because no scenario would have given defense counsel the opportunity to object to that evidence under Rule 404(b). If the Government had prosecuted Count 2, the Government would have sought to present evidence about the

controlled buy as direct evidence of the charge. Rule 404(b) would not have been implicated at all. And defense counsel could not have objected to evidence about the controlled buy after the Government moved to dismiss Count 2, because of that agreement.

The question then is whether defense counsel fell within the "wide range of professionally competent assistance" by entering the agreement to dismiss Count 2. <u>Strickland</u>, 466 U.S. at 689. By agreeing not to object to the controlled-buy evidence, Defendant faced only one charge and potentially avoided an additional conviction that carried a sentence of not more than 30 years. <u>See</u> 21 U.S.C. § 841(b) (1) (C); <u>see</u> <u>also</u> Information Charging Prior Offenses (d/e 30) under 21 U.S.C. § 851(a) (1).

Entering this agreement was not the only way to defend Eddie Jones, but it was within the ambit of professional standards. <u>Strickland</u>, 466 U.S. at 688 ("There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."). Accordingly, Defendant has not overcome the strong presumption of his counsel's effectiveness for declining to object to the 404(b) evidence of the February 18th controlled buy at trial.

**2. Defense Counsel Was Not Ineffective For Declining To Object To Comments Made In Government's Closing Argument Because Improper Propensity Arguments Did Not Violate Defendant's Due Process Rights.**

That agreement, however, does not resolve Defendant's concern about statements the prosecutor made about the controlled buy during his closing argument. Defendant asserts that the prosecutor drew impermissible propensity inferences by trying to prove Defendant's intent to commit the charged crime using the events of February 18th. Admittedly, many of the prosecutor's lines in the closing argument bear a striking resemblance to those used in the closing argument the Seventh Circuit disapproved of in United States v. Miller. 673 F.3d 688 (7th Cir. 2012) ("When intent is an essential element of the charged crime, prior bad acts evidence directed to intent can easily be nothing more than propensity evidence."). In the present case, the Government stated that "it seems a little obvious to say that someone intends to do what they have already done, but that is exactly the case here." Trial Tr., d/e 56 at 260-61. This statement shares the same forbidden propensity inference the Seventh Circuit found problematic in Miller: "He intended to do it before, ladies and

gentlemen, so he must have intended to do it again."  673 F.3d at

699.

Similarly, the prosecutor argued during his closing argument

that Defendant was "doing what drug dealers do; he was selling

drugs."   This comes close to conflating character and conduct or

using character to prove conduct.  See Reed, 744 F.3d at 525

(cautioning courts to ensure Rule 404(b) evidence is not used to

raise improper inference that defendant has propensity to commit

crime).

The present issue before the Court, however, is whether

defense counsel was ineffective for not objecting to these

statements.  Defense counsel's decision to stay silent during the

Government's closing argument is only prejudicial under Strickland

if the prosecutor's comments deprived Defendant of a fair trial.

Hough v. Anderson, 272 F.3d 878, 904 (7th Cir. 2001) (finding that

defense counsel's failure to object to improper statements

prosecutor made during closing arguments could not be prejudicial

when those comments did not violate defendant's right to due

process).

To determine whether a constitutional violation has occurred, the Court evaluates the six factors established in <u>Darden v. Wainwright</u>:

> (1) whether the prosecutor misstated the evidence, (2) whether the remarks implicate specific rights of the accused, (3) whether the defense invited the response, (4) the trial court's instructions, (5) the weight of the evidence against the defendant, and (6) the defendant's opportunity to rebut.

477 U.S. 168, 181-82 (1986).

The prosecutor's statements neither misstated evidence nor implicated Defendant's rights, such as the right to counsel or the right to remain silent. Further, the Government's rebuttal served to "clarif[y]" any potential confusion the improper statements may have caused by reminding the jury that they were only to consider the evidence of the controlled buy to prove Defendant's intent and knowledge. <u>See</u> Trial Tr., d/e 56 at 27-28.

Applying the last three factors of this test, the prosecutor's comments did not violate Defendant's due process rights. The Court instructed the jury that they were only to consider the evidence they saw and heard during the trial and that "the lawyers' statements and arguments are not evidence." <u>See</u> Jury

Instructions—Given to Jury, d/e 46 at 5; see also Zafiro v. United States, 506 U.S. 534, 540 (1993) (stating that juries are presumed to follow instructions); United States v. Ochoa-Zarate, 540 F.3d 613, 620 (7th Cir. 2008) (presuming that jurors followed district court's instruction that jury was obligated to decide facts from evidence and that lawyers' closing arguments were not evidence).

Additionally, the Court instructed the jury as to how they could consider the evidence of the controlled buy from February 18th.  The Court told the jury that they could consider that conduct for "intent" purposes.  Although this is a permissible use of the evidence under Rule 404(b), the Seventh Circuit cautioned against using evidence of prior bad acts to prove intent in Miller.  673 F.3d at 700 ("When intent is an essential element of the charged crime, prior bad acts evidence directed to intent can easily be nothing more than propensity evidence.").  However, the Court also explained to the jury that they could use the events of February 18th to help them decide defendant's "knowledge of the drug trade, opportunity, and absence of mistake or accident."  See Jury Instructions—Given to Jury, d/e 46 at 13.

The weight of the evidence against Defendant, which as previously explained was significant, also supports a finding that the prosecutor's comments did not violate Defendant's due process rights. Even without the prosecutor's propensity arguments, the jury would have learned about the controlled buy that occurred on February 18th in a car registered to Defendant. This fact, along with the many others introduced and admitted at trial, gave the jury enough to convict Defendant of the charge in the Indictment.

Finally, defense counsel had an opportunity to rebut the propensity inference the prosecutor asked the jury to draw in his own closing argument. Defense counsel only briefly addressed the February controlled buy in this closing, but he implored the jury not to inflate or confuse that incident with the criminal conduct charged. Trial Tr., d/e 56 at 26. Therefore, the prosecutor did not violate Defendant's due process rights, and defense counsel was not ineffective for choosing not to object to them.

### 3. Trial Counsel Was Not Ineffective For Not Cross Examining Law Enforcement Officers About An Illinois Statute Requiring State Troopers To Record Traffic Stops.

As of June 1, 2009, the Illinois State Police Department is required to install all patrol vehicles with video recording

equipment.  20 ILCS 2610/30(b).  Officers are also required to record "enforcement stops," such as the traffic stop that occurred in this case on June 5, 2013.  See 20 ILCS 2610/30(a) (defining "enforcement stop" to include traffic stop).  Defendant asserts that his trial counsel was ineffective for not cross examining the Illinois State Troopers who testified in this case about their non-compliance with the statute.  Defendant contends that doing so would have discredited the officers, and may have persuaded the Court to grant Defendant's Motion to Suppress the drugs the Troopers recovered from Defendant's vehicle.

However, this statute is "directory," rather than mandatory. Illinois courts have found that "violation of the statute does not require suppression as a remedy."  People v. Wachholtz, 988 N.E.2d 765, 772 (Ill. App. Ct. 2013).  So again, this issue comes down to trial strategy.  Although defense counsel did not file a Motion to Suppress based on the officers' failure to record the traffic stop, defense counsel did cross examine the witnesses about the failure to record the traffic stop and Agent Giovannelli's interview with Defendant. Defendant has not persuaded this Court that defense counsel would have prevailed on the Motion to Suppress or further

discredited the officers on the stand if counsel would have relied on this statute.  Therefore, Defendant has not shown he was prejudiced or that his counsel was deficient for not introducing the state statute at Defendant's federal criminal trial.

### D. Sufficient Evidence Existed For The Jury To Find Defendant Guilty Of The Charge In The Indictment.

Although Defendant brings his Motion for a New Trial under Rule 33 *and* Rule 29, which governs motions for acquittal, Defendant does not present arguments for acquittal.  However, because the motion was brought under Rule 29, the Court will briefly address it.

The Government's case against Defendant provided more than sufficient evidence to prove Defendant guilty beyond a reasonable doubt.  As previously discussed, the Government presented evidence that officers recovered drugs in the hood of Defendant's car, as well as a long screwdriver that a witness testified could be used to access the air filter under the hood where the drugs were found.  The Government also introduced evidence that Defendant possessed razorblades and baggies which an expert witness testified are used by drug dealers for distribution.  The jury also heard that

Defendant made a statement about his "users" and that he had a "guy" that the Government argued was his "source." Facing this evidence, in addition to the other evidence previously mentioned, Defendant cannot clear the "nearly insurmountable hurdle" that is Rule 29. See Torres-Chavez, 744 F.3d at 993. Therefore, the Motion for a New Trial is also denied on that ground.

## IV.   CONCLUSION

**Because Defendant has not shown that the Court's admission of a declarant's statement jeopardized Defendant's substantial rights or that his trial counsel was ineffective, the Court DENIES the Motion for a New Trial (d/e 59). Accordingly, Defendant's Motion for a New Trial (d/e 49), which is also currently pending, is DENIED as MOOT.**

ENTERED: August 29, 2014

/s Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE